AMERICAN STATE BANK OF DICKIN-SON, Plaintiff and Appellee,

v.

Joe STOLTZ, Defendant and Appellant,

and

Gary Svihovec, Defendant.

Civ. No. 10511.

Supreme Court of North Dakota.

Feb. 23, 1984.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee; argued by John L. Sherman, Dickinson.

Thomas Ewing, Dickinson, for defendant and appellant.

GIERKE, Justice.

Joe Stoltz appeals from an order of the district court finding him to be in contempt of court for refusing to answer questions during a hearing supplementary to execution. We affirm.

In August of 1981, Joe Stoltz and Gary Svihovec borrowed $55,000 from the American State Bank of Dickinson, and executed a promissory note to the Bank. On April 1, 1983, the Bank initiated an action against Stoltz and Svihovec for $27,955.19, the amount due and owing on the note, plus interest. Stoltz was served with a summons and complaint on April 7, 1983. Neither Stoltz nor Svihovec answered the complaint, and a default judgment was entered against them. No appeal was taken from that judgment.

A writ of execution was issued to the sheriff of Stark County and returned unsatisfied. On July 19, 1983, the Bank submitted an application for supplementary proceedings pursuant to Chapter 28–25 of the North Dakota Century Code, and the district court ordered that Stoltz appear before the court on July 25, 1983, to answer questions concerning his property. A subpoena duces tecum was also issued, ordering Stoltz to produce certain financial records at the July 25 hearing. Stoltz was personally served with copies of the order and subpoena duces tecum on July 19. On July 21, Stoltz filed a motion seeking a continuance from July 25 "to a date later in

time." The court denied the motion on July 22.

Stoltz appeared without counsel at the July 25 hearing.[1] After answering a few introductory questions, Stoltz informed the court that he refused to answer any further questions without having an attorney present to represent him. He also stated that he did not want to say anything which might incriminate him. He continued his refusal to answer after being ordered by the trial court to answer the questions and being advised that failure to answer would be contempt of court.

The trial court held Stoltz in contempt for his first five refusals to answer questions. The court fined Stoltz $250, ordered him to pay costs and attorney fees of $525, and sentenced him to ninety days in jail. The court allowed Stoltz twenty days within which to pay the fine, costs, and attorney fees. The court also allowed twenty days within which Stoltz could purge the contempt by paying the judgment in full or by answering the questions which he had refused to answer.[2]

A written order of civil contempt was served on Stoltz on July 28, 1983. Stoltz appealed from the order, and the district court stayed execution of the order pending appeal.

The following issues are raised on appeal:

1. Did the court have personal jurisdiction over Joe Stoltz?

2. Was the notice of the hearing inadequate?

3. Did Joe Stoltz properly assert a Fifth Amendment privilege?

I

Stoltz contends that the district court did not have jurisdiction over him, and that therefore the court could not hold him in contempt for refusing to answer questions at the hearing. Stoltz's argument is based upon his contention that a supplementary proceeding is a new and independent action, which would require service of a summons and, presumably, a twenty-day period to answer.

It has long been the settled law of this state that a supplementary proceeding in aid of execution is not a new, separate action, but is merely a proceeding in the pending action against the judgment debtor. It is not an action on the judgment, but is a continuation of the original action and auxiliary thereto. *Merchants' National Bank of Bismarck v. Braithwaite,* 7 N.D. 358, 75 N.W. 244, 248 (1898). *See also State v. Montoya,* 74 N.M. 743, 398 P.2d 263, 265 (1965); *Arnold v. National Union of Marine Cooks & Stewards Ass'n,* 42 Wash.2d 648, 257 P.2d 629, 632 (1953), *aff'd,* 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954); *State, Dept. of Revenue v. Milwaukee Mack Sales, Inc.,* 91 Wis.2d 1, 280 N.W.2d 274, 277 (1979).

The court acquired jurisdiction over Joe Stoltz when he was served with the summons and complaint on April 7, 1983. Personal jurisdiction was not lost when the judgment was entered, and the court had jurisdiction over Stoltz when it ordered him to appear for examination pursuant to Chapter 28–25, N.D.C.C.

II

Stoltz next contends that he did not receive adequate notice of the oral examination, and that he therefore was unable to secure counsel and prepare for the hearing. Stoltz was personally served with the order to appear and the subpoena on July 19,

---

1. Stoltz also failed to produce any of the documents listed in the subpoena duces tecum. He claimed that he was unable to produce any of the documents listed therein on such short notice. Because the trial court's order of contempt is based solely upon Stoltz's refusal to answer questions when ordered to do so, we need not address Stoltz's failure to produce the documents.

2. The court's order specifically provided that Stoltz would have to pay the fine, costs, and attorney fees even if the contempt were purged. Only the jail sentence would be vacated if Stoltz purged the contempt.

1983, and the hearing was scheduled for July 25.

The provisions of Chapter 28–25, N.D. C.C., govern proceedings supplementary to execution. Section 28–25–01, N.D.C.C., provides that the court which issued the execution may order the judgment debtor to appear and answer questions concerning his property. There is no explicit provision governing time limits for service of the order. Under certain circumstances, the court may issue a warrant directing the sheriff to arrest the judgment debtor and immediately bring him before the court. Section 28–25–05, N.D.C.C.

■ We agree with Stoltz that the judgment debtor is entitled to reasonable notice of the hearing when ordered to appear pursuant to Section 28–25–01. We do not agree, however, that a minimum of five days' notice is required.[3] Absent an explicit statutory time limitation, it is for the court to determine what is reasonable notice under the facts and circumstances of each particular case.

■ Stoltz's primary objection to the notice in this case is his alleged inability to hire counsel in time to represent him at the hearing.[4] The record clearly shows, however, that Stoltz in fact had several months to secure counsel. He was served with the original summons and complaint on April 7. In late April or early May, he was served with a copy of the writ of execution. Although Stoltz testified that he had contacted several Dickinson law firms in attempting to secure counsel, these attempts were made in April or May, shortly after he received the writ of execution.[5] Stoltz admitted that he had been attempting to secure counsel for approximately three months.[6]

It appears from the record that the only attorney Stoltz contacted after receiving the order to appear was his counsel on appeal, Thomas Ewing. Ewing assisted Stoltz in preparing his motion for continuance and the accompanying affidavit. At oral argument, counsel informed the court that Stoltz had requested assistance with the motion and affidavit only, and did not request that Ewing represent him at the hearing.

Stoltz had adequate opportunity to obtain counsel to represent him in this matter, and he made no real effort to obtain representation after being served with the order to appear. We conclude that Stoltz's contentions are without merit, and that the notice of hearing provided to Stoltz was reasonable under the facts and circumstances of this case.

### III

Stoltz next contends that the court violated his rights under the Fifth Amendment by ordering him to answer questions after he had asserted his privilege against self-incrimination. The only "assertion" of the privilege by Stoltz was in response to a question by the court concerning his refusal to answer questions:

---

3. Stoltz contends that, applying the time computation provisions of Rule 6(a), N.D.R.Civ.P., he received only three days' notice of the scheduled hearing.

4. Stoltz also argues that the notice period provided inadequate time for him to gather the records and documents listed in the subpoena duces tecum. In particular, Stoltz contends that many of his records were in the possession of his financial advisor, who resides in New Mexico. Inasmuch as the court based its contempt order on the failure to answer questions, and not the failure to comply with the subpoena, we find it unnecessary to address this issue.

5. Stoltz testified that each firm he contacted declined to represent him because of potential conflicts of interest with Gary Svihovec.

6. In explanation for his failure to defend the main action and his failure to secure counsel at an earlier date, Stoltz claims that he had been relying on Gary Svihovec's continual promises to take care of the matter and pay the judgment. While we realize that Stoltz may have found himself in an unfortunate situation, his misplaced reliance on Svihovec is no excuse for his failure to obtain counsel. Stoltz certainly should have realized the seriousness of the matter when he was served with the summons and complaint and subsequently received the writ of execution from the sheriff.

"[Answer by Stoltz] Well, I can't answer any questions here without counsel.

"THE COURT: Why not, Mr. Stoltz?

"ANSWER BY JOE STOLTZ:

"[Answer] Well because without counsel, I mean, I don't want to say anything that could incriminate me.

"THE COURT: Do you have some reason to believe that what you might say might incriminate you?

"ANSWER BY JOE STOLTZ:

"[Answer] Well, I don't know."

Stoltz raises numerous questions regarding his rights under the Fifth Amendment and the court's statements concerning immunity if he testified. We find it unnecessary to address these issues, however, because we conclude that Stoltz did not properly assert his claim of privilege.

■ It is well settled that there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must be asserted with respect to particular questions, and in each instance it is for the court to determine the propriety of the refusal to testify. *United States v. Dick,* 694 F.2d 1117, 1119 (8th Cir.1982); *United States v. Moore,* 682 F.2d 853, 856 (9th Cir.1982); *Securities and Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 668 (5th Cir.1981); *National Life Insurance Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595, 599 (3rd Cir. 1980); *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Capitol Products Corp. v. Hernon,* 457 F.2d 541, 542–43 (8th Cir.1972).

In *Dorgan v. Kouba,* 274 N.W.2d 167 (N.D.1978), we were presented with a similar situation. A taxpayer had asserted a blanket Fifth Amendment privilege and refused to provide information on his state income tax return. We stated that it is within the province of the court to determine whether or not a question may compel the witness to disclose incriminatory evidence, and the privilege may be validly asserted only when the court determines that there is a "real and appreciable" danger of incrimination. *Id.* at 170–71. Noting that the taxpayer had failed to disclose any real and appreciable danger of incrimination, we held that an unfounded suspicion that the requested information might be provided to other governmental agencies and thereby provide evidence of some unspecified crime was not a sufficient basis for invoking the privilege. *Id.* at 170, 171–72.

■ In *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), the United States Supreme Court stated:

"The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . ."

In *Securities and Exchange Commission v. First Financial Group of Texas, Inc., supra,* 659 F.2d at 668, the court explained the basis for requiring specific objections:

"Requiring a party to object with specificity to the information sought from him permits the district court to rule on the validity of his claim of privilege. A party is not entitled to decide for himself whether he is protected by the fifth amendment privilege. Rather, this question is for the court to decide after conducting 'a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded.' *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976)."

The burden is upon the party claiming the privilege to specifically establish that a real and appreciable danger of incrimination exists with respect to each question. *See Capitol Products Corp. v. Hernon, supra,* 457 F.2d at 544; *Chambers v. McDonald,* 161 Ga.App. 380, 288 S.E.2d 641, 642 (1982); *Eastham v. Arndt,* 28 Wash.App. 524, 624 P.2d 1159, 1165 (1981).

Stoltz made no attempt to show the court how his answers might be incriminating; in fact, when asked whether he had some reason to believe that his answers might incriminate him, he responded, "Well, I don't know." The questions asked of Stoltz did not indicate, under the circumstances, that a response would be incriminating. They were general questions regarding Stoltz's employment, finances, and property holdings. As an example, Stoltz refused to answer the following questions:

"How long have you been employed by Nature Haven?"

"Who owns the automobile, the Escort that you drive?"

"In your home at 627 Second Avenue West here in Dickinson, um, do you have certain items of household goods and other personal property?"

"Do you have a stove in that house?"

"Do you have a bed in that house?"

Stoltz also made a blanket refusal to answer any questions at all:

"Q Are you refusing to answer any question I may ask regardless of what it might be?

"A Yes, at this time, without counsel, yes."

Stoltz has not pointed to anything in the questions themselves or the surrounding facts and circumstances which would even remotely suggest a possibility of incrimination. Furthermore, he asserted a blanket refusal to answer any questions, no matter what the particular questions were. *See National Life Insurance Co. v. Hartford Accident and Indemnity Co., supra,* 615 F.2d at 599.

Under these circumstances, Stoltz left the court no choice but to overrule his claim of privilege. The situation is similar to that presented in *Capitol Products Corp. v. Hernon, supra,* 457 F.2d at 543:

"In the present case, nothing either inherent in the questions or in the setting in which they were asked suggests that the defendant was confronted by a substantial and real hazard of incrimination. The questions themselves were innocuous. There was nothing to link the defendant with any criminal investigation or proceeding. The defendant has not alleged that the purpose of the examination was anything other than an ordinary search of his assets in order to satisfy the judgment against him." [Footnote omitted.]

We conclude that Stoltz failed to properly assert his claim of privilege in the hearing before the district court, and he therefore may not rely on his Fifth Amendment contentions on appeal. *See Securities and Exchange Commission v. First Financial Group of Texas, Inc., supra,* 659 F.2d at 669; *National Life Insurance Co. v. Hartford Accident and Indemnity Co., supra,* 615 F.2d at 599.

We have thoroughly reviewed the remaining issues raised on appeal by Stoltz and find them to be without merit. We therefore affirm the order of the district court.

Because the time limits for purging the contempt contained in the court's order have long ago expired, we find it necessary to set new time limits. Stoltz will have ten days after expiration of the period for filing petitions for rehearing if none are filed, or ten days after disposition of any petitions which are filed, to purge the contempt.[7] The contempt may be purged by paying the fine, paying the costs and attor-

---

**7.** The district court held Stoltz in contempt for his first five refusals to answer questions, but stated in its order that it would "at a later date take under consideration the additional contempt committed by Mr. Stoltz by his failure to answer other questions posed to him." The court further ordered that payment by Stoltz of the fine, costs, and attorney fees, and either paying the judgment or answering the questions, would "partially purge" the contempt. We see no reason to hold further possible penal-

ties over Stoltz's head if he complies with the directives of the district court and this Court. If Stoltz pays the fine, costs, and attorney fees, and either pays the judgment or answers the questions posed to him, the harm caused by Stoltz's contumacious conduct will be remedied and the integrity of the court will be upheld. We therefore conclude that Stoltz may totally purge the contempt by complying with the orders of the district court and this Court.

ney fees, and either paying the judgment in full or answering all of the questions which he refused to answer at the hearing. If Stoltz wishes to purge the contempt by answering the questions, he must so notify the district court and counsel for the Bank in writing within the foregoing time limits, and the court shall schedule a hearing for the earliest available date.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.