**James R. COLSON, Petitioner,**

v.

**Martin JOYCE, Sheriff of Cumberland County, and Attorney General of the State of Maine, Respondents.**

**Civ. No. 86–0118 P.**

United States District Court,
D. Maine.

Sept. 29, 1986.

Stanley F. Greenberg, Portland, Me., for petitioner.

James A. McKenna, Asst. Atty. Gen., Augusta, Me., for respondents.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Presently before the Court is the petition for a Writ of *Habeas Corpus* filed by James R. Colson under 28 U.S.C. § 2254. Petitioner has been on personal recognizance bail since February 10, 1983, following his arrest and imprisonment on February 4, 1983 for default in payment of a fine as authorized by 17–A M.R.S.A. § 1304.[1]

---

**1.** Section 1304 provides as follows:

Default in payment of fines.

1. When a convicted person sentenced to pay a fine defaults in the payment thereof or of any installment, the court, upon the motion of the official to whom the money is payable, as provided in section 1303, or upon its own motion, may require him to show cause why he should not be sentenced to be imprisoned for nonpayment and may issue a summons or a warrant of arrest for his appearance. Un-less such person shows that his default was not attributable to a wilful refusal to obey the order of the court or to a failure on his part to make a good faith effort to obtain the funds required for the payment, the court shall find that his default was unexcused and may order him imprisoned until the fine or a specified part thereof is paid. The term of imprisonment for such unexcused nonpayment of the fine shall be specified in the court's order and shall not exceed one day for each $5 of the

Petitioner has exhausted his remedies in the Maine state courts and now seeks relief from this Court.

## I.

The essential facts can be briefly stated. On November 17, 1981, Petitioner was arrested for a violation of 29 M.R.S.A. § 2184, Driving while license or registration suspended or revoked. At his arraignment on December 28, 1981 in the Ninth District Court, Division of Southern Cumberland, Docket No. 81–CR–33574, Petitioner pled guilty to this offense. Petitioner concedes that he affirmatively, knowingly, and intelligently waived his right to counsel at this arraignment. Upon accepting Petitioner's plea of guilty, the District Court sentenced him to pay a $350 fine, according to a schedule which he requested. Petitioner concedes that at that time he was capable of paying the fine under the imposed schedule.

Petitioner failed to make any of these prescribed payments, and on May 12, 1982, the District Court authorized, *sua sponte*, the issuance of a bench warrant, which was issued on May 24, 1982. On February 4, 1983, Petitioner was arrested under this warrant, and on February 8, 1983, he was brought before the District Court, as authorized by 17–A M.R.S.A. § 1304, to show cause why he should not be committed for his failure to pay the $350 fine. Petitioner was not represented by counsel at this section 1304 hearing, nor was he advised that he had a right to be represented by an attorney, or that, if he was indigent, the court would appoint an attorney to represent him. At this hearing, the court ordered Petitioner committed to the Cumberland County Jail for 35 days to serve out his $350 fine at the rate of $10 per day.

Subsequent to being committed to jail, Petitioner filed a Motion for Appointment of Counsel and an Affidavit of Indigency, under 15 M.R.S.A. § 810. Petitioner has pressed his cause through the state courts, culminating in the denial by the Supreme Judicial Court of Maine of his petition for post-conviction review. *Colson v. State*, 498 A.2d 585 (Me.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1245, 89 L.Ed.2d 354 (1986) (White, J. would have granted certiorari).

## II.

Petitioner contends that he was denied due process of law when the court did not inform him at the section 1304 hearing that he had a right to counsel and that, if he was indigent, the court would appoint counsel for him. Petitioner, through appointed counsel, has expressly waived two issues: (1) whether the District Court correctly inquired of his ability to pay the fine when originally imposed, as mandated by 17–A M.R.S.A. § 1302, (1983); and (2) whether his default in payment of the fine was "excusable" within the meaning of section 1304. Thus, Petitioner isolates the narrow question of whether he had a constitutional right to be represented by counsel at the

---

fine or 6 months, whichever is the shorter. When a fine is imposed on an organization, it is the duty of the person or persons authorized to make disbursements from the assets of the organization to pay it from such assets and failure so to do may be punishable under this section. A person imprisoned for nonpayment of a fine shall be given credit towards its payment for each day that he is in the custody of the department, at the rate specified in the court's order. He shall also be given credit for each day that he has been detained as a result of an arrest warrant issued pursuant to this section.

2. If it appears that the default in the payment of a fine is excusable, the court may make an order allowing the offender additional time for payment, reducing the amount thereof or of each installment, or revoking the fine or the unpaid portion thereof in whole or in part.

3. Upon any default in the payment of a fine or any installment thereof, execution may be levied, and such other measures may be taken for the collection of the fine or the unpaid balance thereof as are authorized for the collection of an unpaid civil judgment entered against a person. The levy of execution for the collection of a fine shall not discharge a person imprisoned for nonpayment of the fine until such time as the amount of the fine has been collected.

17–A M.R.S.A. § 1304 (1983).

section 1304 hearing at which the court committed Petitioner to jail.

### III.

■ The Court must evaluate Petitioner's claim in light of both the scope of his right to counsel and the nature of the proceedings against him. Since the application of the Sixth Amendment to the states in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), criminal defendants in state courts have had a constitutionally guaranteed right to counsel. The general rule is that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972). The right attaches "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). Such stages include the stage at which an accused tenders a plea of guilty, *Argersinger,* 407 U.S. at 34, 92 S.Ct. at 2011 (dicta); *Rice v. Olson,* 324 U.S. 786, 788, 65 S.Ct. 989, 990, 89 L.Ed. 1367 (1945), or is sentenced to imprisonment, *Mempa, supra.* Cf. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (indigent defendant did not have constitutional right to appointed counsel where imprisonment was authorized by statute but not actually imposed). If the right has attached, denial is a *per se* violation of the Constitution. *See United States v. Cronic,* 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984). Thus, once it is determined that the Sixth Amendment right has attached, the due process analysis of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), is inapposite.

■ Not all proceedings that include the possibility of imprisonment involve the Sixth Amendment right to counsel. One example is probation or parole revocation proceedings. For instance, if imprisonment is conditionally imposed at sentencing, the convicted party does not have a Sixth Amendment right to counsel at a subsequent parole or probation revocation hearing at which he merely loses his conditional liberty. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In these post-conviction proceedings, the right to counsel is a due process right. Consequently, an evaluation of "the need for counsel must be made on a case-by-case basis." *Scarpelli,* 411 U.S. at 790, 93 S.Ct. at 1763. This evaluation requires a balancing of the interests involved: the private interest at stake, the government interest, and the risk that the procedures used will lead to an erroneous decision. *See id.; Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

Another example is contempt proceedings. Although apparently a matter of first impression in this Circuit,[2] all Circuit Courts of Appeals that have considered the question have found that there is a right to counsel in civil[3] contempt proceedings at which incarceration can be imposed. *Walker v. McLain,* 768 F.2d 1181, 1184 (10th Cir.1985) (*habeas corpus* petitioner had due process right to counsel in state contempt proceedings for failure to pay court-ordered support where imprisonment could be imposed only if petitioner were not indigent), *cert. denied,* —— U.S. ——, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986); *Ridgway v. Baker,* 720 F.2d 1409, 1415 (5th Cir.1983) (same holding); *United States v. Anderson,* 553 F.2d 1154 (8th Cir.1977) (witness

---

**2.** *See In re Grand Jury Proceedings,* 786 F.2d 3, 7 (1st Cir.1986) (merely noting, in dicta, that other courts agree that the right to counsel attaches to civil and criminal contempt proceedings).

**3.** It has long been established that the traditional criminal due process rights attach to criminal contempt proceedings. *See, e.g., Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441–44, 31 S.Ct. 492, 498–99, 55 L.Ed. 797 (1911).

facing contempt charges for failure to produce records had due process right to counsel); *In re Di Bella*, 518 F.2d 955, 959 (2d Cir.1975) (witness facing contempt charges for failure to answer grand jury questions had right to counsel, but exclusion of counsel from part of the proceeding was harmless error); *In re Kilgo*, 484 F.2d 1215 (4th Cir.1973) (recognizing, in dicta, the right to counsel in contempt proceedings); *United States v. Sun Kung Kang*, 468 F.2d 1368, 1369 (9th Cir.1972) (same); *see also Lassiter v. Department of Social Services*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159–2160, 68 L.Ed.2d 640 (1981) (recognizing, in dicta, "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty"). Because the right to counsel is not absolute in these situations, the due process balancing test of *Mathews v. Eldridge* is again applicable.

Relying on the reasoning of *Morrissey* and *Scarpelli*, Respondent argues that a section 1304 proceeding is a post-conviction proceeding to which no Sixth Amendment right to counsel attaches. In addition, Respondent argues that Petitioner did not have a due process right to counsel at his section 1304 hearing because the hearing was not so complex or adversarial that the assistance of counsel would have lessened the risk of an erroneous decision. The Court, therefore, turns to an analysis of Petitioner's section 1304 proceeding.

## IV.

Both the Maine Legislature and the Maine Law Court have characterized section 1304 hearings as "post-sentencing proceedings." *State v. Colson*, 472 A.2d 1381, 1382 (Me.1984) (citing the definition of post-sentencing proceedings in 15 M.R.S.A. § 2121(2) (Supp.1985), which expressly refers to section 1304). Nevertheless, the Law Court has declined to characterize section 1304 as imposing either a conditional sentence of imprisonment at the time a convicted person is sentenced to pay a fine, *Colson v. State*, 498 A.2d 585, 588 (Me. 1985) ("Although the sentence did not in-

clude imprisonment, the imposition of a fine exposed Colson to incarceration pursuant to section 1304 for unexcused default in payment."), or a sentence of imprisonment in the nature of a civil contempt sentence. *See id.* at 590 (Nichols, J., dissenting). This absence of a precise characterization of section 1304 creates a lacuna in the sentencing process that is inconsistent with the rationale of *Morrissey* and *Scarpelli.*

In both *Morrissey* and *Scarpelli*, the defendants had been convicted of crimes and sentenced to terms of imprisonment. In *Scarpelli*, the Court specifically stressed the significance of the defendant's underlying sentence of imprisonment when the Court distinguished the case from *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). In *Mempa*, the Court had held that "a lawyer must be afforded at [a sentencing] proceeding" where the defendant's sentencing was deferred subject to probation. *Id.* at 137, 88 S.Ct. at 258. In *Scarpelli*, the Court found that the reasoning of *Mempa* would not apply "in a case such as the present one, where the probationer was sentenced at the time of trial." *Scarpelli*, 411 U.S. at 781, 93 S.Ct. at 1759.

█ This Court finds that the reasoning of *Morrissey* and *Scarpelli* cannot apply to Petitioner's section 1304 proceeding unless this Court construes section 1304 as imposing a conditional sentence of imprisonment at the time Petitioner was sentenced to pay his fine. This construction of section 1304, however, is inconsistent with the State's statutory scheme of "Authorized Sentences" in 17–A M.R.S.A. § 1152 (1983). Under section 1152, Maine courts are empowered to impose only the sentences delineated by the statute. One of these sentences is a suspended sentence with probation. *Id.* § 1152(2)(A). One of the authorized conditions of probation is a condition that the probationer pay a statutory fine. *Id.* § 1204(2–A)(K). Section 1152 does not mention a conditional sentence in accordance with section 1304. In addition, if section 1304 had the effect of imposing a conditional sentence of imprisonment *sub*

*silentio* upon each criminal fine, section 1204(2–A)(K) would be superfluous. Consequently, this Court agrees with the Maine Law Court that Petitioner's original sentence did not include conditional imprisonment. Because Petitioner's original sentence did not include an underlying sentence of imprisonment, his section 1304 proceeding cannot be analogous to either a probation or parole revocation. Hence, the reasoning of *Morrissey* and *Scarpelli* cannot apply.[4]

This Court finds that a section 1304 proceeding is a hybrid form combining aspects of the natures of both a civil contempt proceeding and a deferred sentencing proceeding. Similar to a civil contempt proceeding, the defaultee is called before the court to explain his failure to obey a court order. Section 1304 authorizes imprisonment only if the defaultee could have paid the fine but failed to do so because of either his "wilful refusal" or his "failure ... to make a good faith effort" to obey. 17–A M.R.S.A. § 1304. In addition, the imprisonment appears to be coercive because confinement continues only "until the fine or a specified part thereof is paid." *Id.* Therefore, by paying the fine, the defaultee holds the keys to his jail cell analogous to the civil contempt prisoner. Moreover, the statute does not authorize imprisonment if the default is excused, such as if the defaultee was indigent and thus could not pay the fine. This provision also paral-lels the courts' civil contempt powers: if a defaultee is unable to obey the court order, then necessarily there is no contempt of court.

Section 1304 is not, however, a true contempt statute since the length of imprisonment that can be imposed at a section 1304 hearing is constitutionally limited by the statutory sentencing ceiling available for the original offense. *Williams v. Illinois,* 399 U.S. 235, 240–41, 90 S.Ct. 2018, 2021–22, 26 L.Ed.2d 586 (1970). Section 1304 contains its own limitation which insures that the confinement will not exceed constitutional limits: "one day for each $5 of the fine or 6 months, whichever is the shorter." 17–A M.R.S.A. § 1304. Thus, in effect, section 1304 imposes a sentence of imprisonment that is directly related to the original crime, similar to a deferred sentencing procedure.

Regardless, however, of whether section 1304 is characterized as a contempt or a deferred sentencing proceeding,[5] a determination of whether counsel is necessary must rest on the due process analysis required by *Mathews v. Eldridge.* Applying the *Eldridge* criteria, this Court finds that Petitioner had a substantial, undiminished interest in his absolute liberty at the time of the section 1304 proceeding since it was not until the conclusion of that proceeding that it could be determined whether Petitioner was to be subjected to imprisonment. *Contra Colson v. State,* 498 A.2d

---

**4.** If the Court were to conclude that section 1304 imposed a conditional sentence of imprisonment in these circumstances, thus rendering *Morrissey* and *Scarpelli* applicable, the effect would be to convert each criminal fine into an imposition of conditional imprisonment. Consequently, every criminal defendant facing the imposition of a criminal fine would have a Sixth Amendment right to counsel at the time of trial or tender of a guilty plea but would have no absolute right to counsel at any subsequent section 1304 hearing. Furthermore, a knowing and intelligent waiver under these circumstances would require a showing that the defendant knew that he was conditionally sentenced to prison at the time the fine was imposed. Under this interpretation of section 1304, Petitioner's challenge today would fail since he concedes that he waived his right to counsel when he was originally sentenced.

**5.** The *Mempa* decision can be characterized as imposing an absolute right to counsel at sentencing proceedings. *Mempa v. Rhay,* 389 U.S. at 134, 88 S.Ct. at 256. Nevertheless, after stating that no special circumstances are necessary to invoke the right to counsel at sentencing, the Court went on to enumerate the various special circumstances of the case that highlighted the need for counsel. *Id.* at 135–37, 88 S.Ct. at 257–58. If *Mempa* does indeed state a *per se* rule, then to the extent that the section 1304 proceeding was a resentencing proceeding, Petitioner had an absolute right to counsel. If, however, *Mempa* states a due process balancing test, this Court nevertheless would reach the same result that it reaches above in evaluating the due process balance in the civil contempt context.

at 588. This Court also finds that the State has a substantial interest in insuring that convicted criminals are not allowed to escape punishment by wilfully failing to obey court-ordered sanctions. Finally, this Court finds that the assistance of counsel would appreciably decrease the risk of an erroneous decision.

It is uncontroverted that factual determinations lie at the heart of a section 1304 hearing. The court must find that the defaultee's failure to pay his criminal fine was wilful or unexcused before the court can impose the imprisonment authorized by section 1304. Central to the court's power to imprison, therefore, are the factual findings regarding the defaultee's prior ability to pay.

The Circuit Courts of Appeals for both the Fifth and the Tenth Circuits have considered the due process right to counsel in cases in which the court's power to imprison the party before it turned solely on one factual determination. *Walker v. McLain*, 768 F.2d 1181 (10th Cir.1985); *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983). Both cases involved the review of *habeas corpus* petitions of defaultees imprisoned after contempt proceedings for the failure to pay court-ordered child support. In both cases, the state courts could not have held the defaultees in contempt if the courts had found that the defaultees were indigent. *Walker*, 768 F.2d at 1184; *Ridgway*, 720 F.2d at 1415. Based on the significance of the factual findings, both courts found that the risk of error, and the seriousness of the deprivation should error occur, shifted the due process balance in favor of providing counsel in all such cases.

■ This Court finds the reasoning of *Walker* and *Ridgway* persuasive, given the similarity between the state's contempt powers in those cases and the court's powers under section 1304. Although the factual findings in a section 1304 hearing are straight-forward, the correctness of their determination is crucial to the defaultee's liberty. Clearly, the assistance of counsel would lessen the risk of an erroneous result. One of the foremost roles of the advocate appearing before the court is his role in gathering and presenting the facts. Competent counsel understand the relevancy of facts and know whether they need to ferret out material information that an uncounseled defendant may forget or overlook. In addition, by presenting the facts in a cogent and organized fashion, competent counsel save the court valuable judicial time and aid in the integrity of the fact-finding process. Consequently, this Court finds that Petitioner's interest in his absolute liberty and the importance of the section 1304 findings to that liberty clearly outweigh the State's interest in enforcing its penalties without incurring the costs of court-appointed counsel. When this balance of interests is weighed against the *Lassiter* presumption that an indigent has a right to counsel when, if he loses, he may be deprived of his liberty, it is clear to this Court that the assistance of counsel is mandated at all section 1304 proceedings.[6]

The importance of counsel at section 1304 proceedings is highlighted by the facts of Petitioner's case. As Respondent correctly notes, the Maine statutes do not squarely address the situation of this Petitioner: a convicted person who refused to pay his criminal fine although he was able to do so but who now claims that he was indigent at the time of his section 1304 hearing. Respondent argues that to forbid imprisonment in this situation would be to allow Petitioner to "easily avoid any pun-

---

**6.** The Maine Law Court did note that an attorney could offer assistance in the factual determination of whether the default was excused. *Colson v. State*, 498 A.2d at 588. The Maine court, however, did not find that the need for counsel affected the due process balance. The Maine court reached this conclusion because it found that the Petitioner had only a conditional liberty interest at stake. Consequently, the state court did not apply the *Lassiter* presumption, noting that the presumption applies to only absolute liberty. *Id.* n. 6.

In light of the basis for the state court's decision, it should be noted that this Court is not merely striking a new balance of the same interests. Instead, the Court squarely bases its balancing of the interests on its differing perceptions of the interests at stake.

ishment." Respondent's Brief at 12, *Colson v. State*, 498 A.2d 585 (Me.1985). As Respondent apparently admits, imprisonment in this situation would not be coercive but instead would be punitive because the indigent Petitioner could not gain his release by paying his fine. Thus, the imprisonment would appear to be analogous to imprisonment for criminal contempt. This aspect of the case further supports the Court's conclusion that counsel must be afforded at section 1304 proceedings. If the section 1304 proceeding is to be characterized as analogous to a civil contempt proceeding, it would appear to be mandatory that the court at that time make a finding of a present ability to pay. *See Wells v. State*, 474 A.2d 846, 851–52 (Me. 1984) (criminal contempt may rest on a past ability and past refusal to comply with the court's order, but civil contempt requires a finding of a present ability to comply). If, however, there is no present ability to pay although there was a past wilful refusal to pay, the present indigency of the Petitioner transforms his imprisonment into criminal punishment to which an absolute right to the assistance of counsel attaches.

Finally, the Court turns to Petitioner's waiver of a claim of prejudice in this instance.[7] The Court finds that this waiver is not fatal to Petitioner's claim. It is well-accepted that the denial of the assistance of counsel in criminal proceedings is so fundamental as to require reversal regardless of the circumstances. *See, e.g., Delaware v. Van Arsdall*, — U.S. —, —, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986); *United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984).

Accordingly, the Petition for a Writ of *Habeas Corpus* is hereby GRANTED and the sentence of imprisonment imposed upon Petitioner at his section 1304 hearing is hereby VACATED. Petitioner is to be released from confinement or bail in the existing section 1304 proceeding in the Maine state courts unless the state shall, within sixty (60) days hereof, afford the Petitioner a section 1304 hearing at which he is advised of his right to counsel and that right is appropriately recognized.

So ORDERED.

---

7. The Court recognizes that Petitioner's waiver of any claim of error at his section 1304 proceeding readily distinguishes this case from both *Walker v. McLain* and *Ridgway v. Baker*, *supra*. Nevertheless, because of the punitive nature of Petitioner's imprisonment, the Court finds that his right to counsel was absolute.