STATE of North Dakota, COUNTY OF CASS, ex rel. Gail Rae GULLICKSON, and Luke William Gullickson, a minor child, by and through his guardian, Bonnie Johnson, Plaintiffs and Appellees,

v.

Charles William GRUCHALLA, Defendant and Appellant.

Civ. No. 900119.

Supreme Court of North Dakota.

March 19, 1991.

Charles William Gruchalla, defendant and appellant pro se.

Stephen R. Dawson (argued), Asst. States Atty., Regional Child Support Enforcement Unit, Fargo, for plaintiffs and appellees.

ERICKSTAD, Chief Justice.

Charles Gruchalla appeals from an order of the District Court for the East Central Judicial District, dated February 13, 1990, which approved, adopted, and affirmed the findings of fact and conclusions of law of the judicial referee in a civil contempt proceeding. Gruchalla was found in civil contempt of court for failure to pay his child support obligations. Gruchalla appeals, asserting that he was improperly denied court-appointed counsel. We reverse and remand.

During November of 1982, a paternity action was commenced against Gruchalla. On December 10, 1982, the district court entered an order, pursuant to a stipulation by the parties, which established a parent-child relationship between Gruchalla and the child in question. Gruchalla was ordered to pay child support in the amount of $100 per month. The rights to the support payments were subsequently assigned to the State of North Dakota upon the mother's application for public assistance.

On ten separate occasions since February of 1984, the State of North Dakota has requested that civil contempt citations be imposed upon Gruchalla as a result of his failure to meet his child support obligations. Prior to this appeal, Gruchalla spent 30 days incarcerated as a result of civil contempt proceedings.

The latest request for the issuance of a civil contempt citation, and the subject of this appeal, was initiated on December 8, 1989. During those proceedings, Gruchalla asked to be represented by court-appointed counsel. The record discloses that the dis-

trict court was initially reluctant to provide court-appointed counsel in a civil proceeding, but none-the-less agreed to provide Gruchalla with counsel provided Gruchalla could first prove he was indigent.

The district court asked Gruchalla to provide evidence that he was indigent. Gruchalla refused, asserting that under the Fifth Amendment to the United States Constitution, he was entitled to remain silent on the ground that to answer might tend to incriminate him. Gruchalla indicated that he would be willing to testify concerning his indigence upon the condition that he be granted immunity from prosecution. As an alternative, Gruchalla suggested that the court hold an *in camera* hearing to consider his claim of indigence. The district court denied Gruchalla's request for an *in camera* hearing and subsequently denied his request for counsel at state expense.

■ Although it appears to be a question of first impression of this Court, it is well-settled that the Sixth Amendment right to counsel attaches in some civil contempt proceedings where the penalty of incarceration will be imposed.[1] *E.g., Colson v. Joyce,* 646 F.Supp. 102, 105 (D.Me.1986). *Colson* provides an excellent discussion of the right to counsel in civil contempt proceedings. *Id.* at 105–106. It asserts that all Federal Circuit Courts of Appeals have held that such a right exists. *Id.* at 105.

The United States Supreme Court has also recognized, in dicta, that indigent defendants have a right to have counsel appointed at government expense when their physical liberty is in jeopardy. *Lassiter v. Department of Social Services,* 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159–2160, 68 L.Ed.2d 640 (1981). We agree that indigent defendants in civil contempt proceedings should be granted counsel at state expense when, if they lose, they will likely be deprived of their physical liberty.[2]

■ In the instant case, Gruchalla was afforded the right to counsel at state expense provided he offered proof of his indigence. The issue, therefore, is whether or not Gruchalla could refuse to provide evidence concerning the question of indigence based upon the Fifth Amendment privilege against self-incrimination.

Gruchalla asserts that the Fifth Amendment provides him with an "absolute" privilege to remain silent at any time. One's rights under the Fifth Amendment are not quite that simple.

We recognize that the Fifth Amendment protection against self-incrimination may be asserted in civil, criminal, or administrative proceedings. *Estate of Fisher v. C.I.R.,* 905 F.2d 645, 648 (2nd Cir.1990) (citing *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972));

**1.** The right to counsel in criminal prosecutions in North Dakota is protected by Article I, § 12 of the North Dakota Constitution. The legislature has also addressed the right to counsel. Some examples of statutory provisions relating to the appointment of counsel are: § 27–20–26 (right to counsel during juvenile proceedings); § 27–20–45 (right to counsel in matters concerning the termination of parental rights); § 29–05–20 (right to counsel following an arrest); § 29–01–06 (right to counsel in criminal defense); § 29–07–01.1 (providing for the compensation of state appointed counsel); § 29–32.1–05 (right to counsel in post conviction proceeding). We also note that a party may be afforded counsel in proceedings to establish paternity under N.D.C.C. § 14–17–18. Initially, Gruchalla asserted his right to counsel under § 14–17–18, but later appeared to rely on the Sixth Amendment right to counsel. Because we have disposed of this case on the basis of the Sixth Amendment right, we need not determine the extent of the right to counsel provided by § 14–17–18. The North Dakota Rules of Criminal Procedure also addressed the right to counsel: N.D.R.Crim.P. 10 (defendants are to be informed of their right to counsel); N.D.R.Crim.P. 5(b)(1) (defendants shall be informed of their right to counsel at their initial appearance); N.D.R.Crim.P. 5(b)(2) (when faced with felony charges, defendants have a right to counsel during the preliminary hearing); N.D.R.Crim.P. 44 (indigent defendants have the right to counsel in felony cases and in all non-felony cases where the defendant is faced with imprisonment).

**2.** Because the state has failed to challenge the district court's determination that Gruchalla should be afforded counsel, we will not question that decision on appeal. However, we note that where "conditional" penalties are imposed for contempt, the defendant may not be entitled to the same protections that a defendant under the risk of purely punitive penalties is entitled. *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *see infra,* note 3.

*State v. Gross,* 351 N.W.2d 428, 432 (N.D. 1984).

■ The witness may assert the privilege when he or she believes that the testimony sought may "furnish a link in the chain of evidence needed to prosecute" him or her for a crime.[3] *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

"The right not to answer potentially incriminating questions in a civil or criminal proceeding, however, is not absolute.

**3.** We have not yet established the boundaries for determining when persons may assert their Fifth Amendment privileges against self-incrimination arising from a fear of criminal prosecution. The United States Supreme Court has, however, said:

"[O]ur Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty."

*Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). In *Gault,* the Supreme Court reversed the committal of a juvenile to the Arizona State Industrial School, in part, on the basis that the state had failed to advise the boy of his privilege against self-incrimination.

More recently, the United States Supreme Court narrowed that view, saying:

"*Gault's* sweeping statement that 'our Constitution guarantees that no person shall be "compelled" to be a witness against himself when he is threatened with deprivation of his liberty,' is plainly not good law. Although the fact that incarceration may result is relevant to the question whether the privilege against self-incrimination applies, ... involuntary commitment does not itself trigger the entire range of criminal procedural protections. [Citations omitted.]"

*Allen v. Illinois,* 478 U.S. 364, 372, 106 S.Ct. 2988, 2994, 92 L.Ed.2d 296 (1986).

Even more recently in a case involving a contempt proceeding following a failure to comply with a child support order, the United States Supreme Court distinguished between civil and criminal contempt and indicated the different consequences that flow from each:

"The question of how a court determines whether to classify the relief imposed in a given proceeding as civil or criminal in nature, for the purposes of applying the Due Process Clause and other provisions of the Constitution, is one of long standing, and its principles have been settled at least in their broad outlines for many decades. When a State's proceedings are involved, state law provides strong guidance about whether or not the State is exercising its authority 'in a nonpunitive, noncriminal manner,' and one

The prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings. As Justice Blackmun noted in his concurrence in *Pillsbury* [*v. Conboy,*] '[i]t is black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify "if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness." ' 459 U.S. [248] at

who challenges the State's classification of the relief imposed as 'civil' or 'criminal' may be required to show 'the clearest proof' that it is not correct as a matter of federal law. Nonetheless, if such a challenge is substantiated, then the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law. This is particularly so in the codified laws of contempt, where the 'civil' and 'criminal' labels of the law have become increasingly blurred.

"Instead, the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. 'If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.' The character of the relief imposed is thus ascertainable by applying a few straight-forward rules. If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.' If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. These distinctions lead up to the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings, including the requirement that the offense be proved beyond a reasonable doubt. [Citations and footnotes omitted.]"

*Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988).

Our Court has quite recently delineated the differences between civil and criminal contempt in *Baier v. Hampton,* 417 N.W.2d 801 (N.D. 1987).

273, 103 S.Ct. [608] at 622 [74 L.Ed.2d 430 (1983) ] (quoting *Brown v. Walker,* 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896)).''

*Andover Data Services v. Statistical Tabulating,* 876 F.2d 1080, 1082 (2nd Cir.1989).

■ The Fifth Amendment privilege against self-incrimination does not allow a blanket refusal to answer any questions in a civil matter. *E.g., Estate of Fisher,* 905 F.2d at 648–49; *United States v. Shivers,* 788 F.2d 1046, 1049 (5th Cir.1986); *American State Bank of Dickinson v. Stoltz,* 345 N.W.2d 365, 369 (N.D.1984). In *Stoltz,* a case involving a refusal to answer questions during a hearing supplementary to the execution of a judgment, we said:

> "It is well settled that there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must be asserted with respect to particular questions, and in each instance it is for the court to determine the propriety of the refusal to testify. [Citation omitted.]"

345 N.W.2d 369. We also noted in *Stoltz:*

> " 'The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified....' "

*Id.* (quoting *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818, 95 L.Ed. 1118); *Estate of Fisher,* 905 F.2d at 648.

■ When the danger of incrimination is not apparent "the burden of establishing its existence rests on the person claiming the privilege." *Estate of Fisher,* 905 F.2d at 649. The asserting party has the burden to "specifically establish that a real and appreciable danger of incrimination exists with respect to each question." *Stoltz,* 345 N.W.2d at 369.

Gruchalla refused to answer any questions presented to him, and refused to provide the court with a rationale as to why his testimony would violate his privilege against self-incrimination. However, in light of the fact that he was facing a contempt charge for failure to pay child support, had Gruchalla testified relative to indigence without the assurance that his testimony would not be used against him, he likely would have been testifying concerning income and assets available to him, and that testimony could "furnish a link in the chain of evidence needed" to prove the contempt. We conclude that, as any disclosure of facts relative to proof of indigence could be used to incriminate him in the contempt proceedings, he should have been afforded an opportunity to prove his indigence during an *in camera* hearing.[4]

■ In so concluding, we have not relieved Gruchalla of his burden of providing evidence of his indigence, nor have we relieved him of showing cause why he should not be found to be in contempt of court for

---

**4.** Because the state has not challenged Gruchalla's assertion of the privilege, we have refrained from deciding whether or not a person may invoke the privilege against self-incrimination where the fear is that the evidence may be used in a "civil" contempt proceeding. The United States Supreme Court has recognized that "conditional" contempt penalties are civil in nature. *Hicks,* 485 U.S. 624, 108 S.Ct. at 1430. In *Hicks,* the Supreme Court stated:

> "The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is 'solely and exclusively punitive in character.' *Penfield Co. v. SEC,* 330 U.S. 585, 593, 67 S.Ct. 918, 922, 91 L.Ed. 1117 (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. 'One who is

fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, "carry the keys of their prison in their own pockets." ' *Id.,* at 590, 67 S.Ct., at 921, quoting *In re Nevitt,* 117 F. 448, 461 (CA8 1902)."

*Id.* In the case at hand a conditional penalty was imposed upon Gruchalla. Gruchalla could either spend a maximum of 30 days in jail, or, at anytime, comply with the court ordered support payments and be released. Although this seems significant in determining whether or not providing evidence which could be used in the contempt proceedings would have been "self-incriminating," because the state failed to challenge the district court's initial determination that Gruchalla should have counsel, we will not question that determination today. *See supra,* note 1.

failing to support his child. If he proves his indigence *in camera,* he should be permitted to have counsel appointed to represent him at state expense in the contempt proceedings before another judge who has not participated in the *in camera* proceedings. This procedure will permit Gruchalla to have his right to the appointment of counsel at state expense determined without the risk of incriminating himself.

In *United States v. Rylander,* a case in which the defendant had been charged with civil contempt for failure to comply with an IRS summons, the United States Supreme Court said:

"The Court of Appeals also gave weight to the fact that Rylander's asserted reason for refusing to allow cross-examination was his claim that answering such questions might lead him to incriminate himself. But while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view."

460 U.S. 752, 758, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983). While our decision is intended to protect Gruchalla's right to counsel, it should not be read to expand the right generally to claim the Fifth Amendment privilege against self-incrimination.

For the reasons stated above, we reverse and remand this case for further proceedings consistent with this opinion.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I concur in that portion of the opinion which holds that when there is a right to counsel which, as I understand, the State has conceded in this case, then, a defendant is entitled to at least some *in camera* procedure when his testimony about indigence may be self-incriminating. As a prerequisite, a defendant must first, however, "specifically establish that a real and appreciable danger of incrimination exists with respect to each question." *American State Bank of Dickinson v. Stoltz,* 345 N.W.2d 365, 369 (N.D.1984).

My disagreement with the majority arises from the proper application of *Stoltz* to the facts at hand. I disagree that Gruchalla has established that he is automatically entitled to a full *in camera* proceeding on the issue of his alleged indigence. I agree, however, that on remand, he is entitled to show, *in camera,* as a threshold matter, why his right to self-incrimination generally is really and appreciably endangered. *Stoltz.* If he does meet this threshold requirement, there should follow, still *in camera,* individual questions relating to his alleged indigence and he should be called upon to explain why each question poses a "real and appreciable danger of incrimination." If Gruchalla does not establish a real and appreciable danger, either generally or specifically, the *in camera* proceeding should be terminated.

I agree that this case should be remanded for further proceedings. I, therefore, specially concur.