515 N.W.2d 444 (1994)
In the Matter of the Ward County State's Attorney's Inquiry Commenced on September 7, 1993, in re the CONTEMPT OF Valerie GRAJEDAS, a minor, By and Through her mother and best friend, Rhonda TAKES THE HORSE.
Valerie GRAJEDAS, a minor, By and Through her mother and best friend, Rhonda TAKES THE HORSE, Appellant,
v.
The Honorable Gary A. HOLUM, Judge of the District Court for Ward County, and Douglas L. Mattson, Ward County State's Attorney, Appellees.
In the Matter of the Ward County State's Attorney's Inquiry Commenced on September 7, 1993, in re the CONTEMPT OF Heide FUNKE.
Heide FUNKE, Appellant,
v.
The Honorable Gary A. HOLUM, Judge of the District Court for Ward County, and Douglas L. Mattson, Ward County State's Attorney, Appellees.
Civ. Nos. 930289, 930290.
Supreme Court of North Dakota.
April 20, 1994.
*447 Schoppert Law Firm, Minot, for appellant; argued by Thomas K. Schoppert.
Douglas L. Mattson (argued), State's Atty., Minot, for appellees.
MESCHKE, Justice.
Valerie Grajedas and Heide Funke appeal from orders holding each of them in contempt for refusing to testify at a state's attorney's inquiry after the trial court granted "immunity." Because the attorney general did not approve the applications for immunity to these witnesses, we reverse.
Chaska Running Shield died on August 25, 1993, from injuries in a fight several hours earlier on South Broadway Street in Minot. The Ward County State's Attorney received permission under NDCC 11-16-15 to hold an inquiry into the circumstances around Running Shield's death, and subpoenaed Grajedas and Funke to testify on September 8, 1993 at the inquiry.
The state's attorney asked both Grajedas and Funke if they were near South Broadway at the time of the fight. They each exercised their Fifth Amendment privilege against self-incrimination and refused to answer the question. After being told that the prosecution had no reason to suspect either committed a crime, Grajedas and Funke each still refused to answer.
Instead of asking more questions, the prosecution requested an order to show cause why Grajedas and Funke should not be held in contempt. At the hearing on September 9, the prosecution repeated that neither witness was a suspect. Despite the district court's assurance that NDCC 31-01-09 prohibited the adverse use of their testimony in any future criminal proceedings, Grajedas and Funke refused to testify. The court found them in contempt and ordered them jailed until they agreed to testify.
The district court refused to stay the orders during appeal. Grajedas and Funke each appealed the district court's order the same day they were jailed, and they immediately asked this court for a stay of the orders. Before we ruled on these requests, and at the request of the prosecutor, the district court released Grajedas and Funke from jail and removed their obligations to testify at the inquiry. Although the district court did not purge Grajedas and Funke of the contempts, stays were no longer necessary, and we denied the requests for stay as moot.
In their consolidated appeals, Grajedas and Funke argue that they cannot be held in contempt for properly exercising their privilege against self-incrimination. The prosecution argues that these appeals are moot because the sanctions for their contempts have been removed. It also claims that Grajedas and Funke improperly exercised their privilege because they would not be incriminated by admitting they were at the scene of the fight. Even if their answers could be incriminating, *448 the prosecution argues that Grajedas and Funke were given immunity so their testimony could not be used against them. Therefore, the prosecution urges, Grajedas and Funke were each properly held in contempt for refusing to testify. We disagree.

1. Mootness

Any order finding a person in contempt is final and can be appealed to this court. NDCC 27-10-01.3(3). If the purpose of the court's order is coercive, the sanction is remedial. NDCC 27-10-01.1(4); Baier v. Hampton, 417 N.W.2d 801, 805 (N.D.1987). The purpose of the order in this case was to persuade Grajedas and Funke to testify. Therefore, this sanction was remedial, and the court could jail Grajedas and Funke "for as long as the contemnor continues the contempt or six months, whichever is shorter." NDCC 27-10-01.4(1)(b). Still, the prosecution argues that this appeal is moot because Grajedas and Funke have been released from jail and no longer have to testify.[1]
An appeal will be dismissed as moot when the appellate court is "unable to render effective relief due to the lapse of time or the occurrence of related events." Walker v. Schneider, 477 N.W.2d 167, 169 (N.D.1991). An appeal is not moot if the trial court's decision continues to have "collateral consequences" for the appealing party. Sampson v. State, 506 N.W.2d 722, 724 n. 1 (N.D.1993); see also Varnson v. Satran, 368 N.W.2d 533 (N.D.1985). Although released from jail, Grajedas and Funke did not comply with the district court's orders and were not purged of their contempts.[2] Therefore, these appeals are the only way Grajedas and Funke can challenge the orders and remove the individual stigma of their contempt convictions.
An inability to purge oneself of contempt can be an appealable adverse consequence of being held in contempt. See People v. Buckley, 164 Ill.App.3d 407, 115 Ill. Dec. 428, 430, 517 N.E.2d 1114, 1116 (1987); Janet D. v. Carros, 240 Pa.Super. 291, 362 A.2d 1060, 1070 (1976). Compare State ex rel. Watson v. Watson, 858 S.W.2d 841 (Mo. Ct.App.1993) (appeal of invalid contempt moot where person who did not comply had been discharged by habeas corpus). But see Ex Parte Richardson, 640 S.W.2d 294 (Tex. Crim.App.1982). We conclude that these appeals are not moot because the district court's findings of contempt continue to have adverse consequences for Grajedas and Funke that can be remedied on appeal.
Even if technically moot, we will address a dispute about the power of public officials that has great public interest, or "where the question is capable of repetition, yet evading review." Walker, 477 N.W.2d at 169; see also Gosbee v. Bendish, 512 N.W.2d 450 (N.D.1994). Similarly, the court in In Re Getty refused to dismiss the appeal of a contemnor who was released from jail but not purged of remedial contempt, because the questions were of "general interest to the people and of importance in the administration of the law." 427 So.2d 380 (Fla.Dist.Ct. App.1983). Like the appeals in Walker and In Re Getty, these appeals "affect[] the scope of a prosecutor's authority to enforce the laws of this state, and the legal rights of citizens at large." Walker, 477 N.W.2d at 170. Therefore, these appeals are not moot, and we review the orders finding Grajedas and Funke in contempt.

2. Contempt

"In a contempt proceeding, the complainant has the burden of showing that the defendant committed the contemptuous acts, and the defendant has the burden of showing that the contemptuous acts were legally justified." Bjorgen v. Kinsey, 491 N.W.2d 389, 396 (N.D.1992). A trial court's decision that a remedial contempt has occurred will not be disturbed on appeal unless the court abused its discretion. Bjorgen, 491 N.W.2d at 395. *449 As we said in Spilovoy v. Spilovoy, 488 N.W.2d 873, 875 (N.D.1992), a trial court erroneously exercises its discretion if it acts arbitrarily, unconscionably, or unreasonably.
Contempt of court includes the intentional refusal of a witness to testify after being ordered to do so by the court. NDCC 27-10-01.1(1)(d). Before being held in contempt, the witness must know of the order and the court must have jurisdiction to compel the testimony. Bjorgen, 491 N.W.2d at 395. Unless granted immunity as comprehensive as the privilege against self-incrimination, a witness cannot be held in contempt for properly exercising the privilege. Kastigar v. United States, 406 U.S. 441, 449, 92 S.Ct. 1653, 1658-59, 32 L.Ed.2d 212 (1972); see also Dahlen v. Dahlen, 393 N.W.2d 769, 770 (N.D.1986) (disobedience of order exceeding court's jurisdiction not punishable as contempt). We conclude that Grajedas and Funke properly exercised their privilege against self-incrimination and were not given sufficient immunity. Therefore, the trial court erroneously exercised its discretion by holding them in contempt.

3. Self-Incrimination

Courts in North Dakota have broad powers to compel the attendance and testimony of witnesses. See NDRCivP 45; NDRCrimP 17.
But the power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.
Kastigar, 406 U.S. at 444-45, 92 S.Ct. at 1656 (footnotes omitted).[3] Whether a person claims the privilege against self-incrimination in a state statutory inquiry or a federal criminal prosecution is "irrelevant." Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964). Therefore, Grajedas and Funke could not be compelled to incriminate themselves at the state's attorney's inquiry.
A witness must properly exercise the privilege against self-incrimination in order to obtain its protection. State v. Faul, 300 N.W.2d 827, 829 (N.D.1980). The witness must claim the privilege "with respect to particular questions," so the court can determine whether "the witness reasonably believes" there is a "real and appreciable" danger that an answer would either directly incriminate them or "furnish a link in the chain of evidence" necessary to prosecute them. Kastigar, 406 U.S. at 445, 92 S.Ct. at 1656; Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); American State Bank of Dickinson v. Stoltz, 345 N.W.2d 365, 369 (N.D.1984). As we said in Stoltz at 369, unless apparent from the question, the witness must specifically establish that such a danger "exists with respect to each question."
The prosecution argues that Grajedas and Funke simply refused to testify at the state's attorney's inquiry. Unless they are defendants, witnesses in a criminal proceeding cannot refuse to testify. See Stoltz, 345 N.W.2d at 369. Because the prosecution stopped each inquiry after the first question, Grajedas's and Funke's refusals to answer the question had the same effect as blanket refusals to testify. However, as they explained at the contempt hearing, each simply refused to answer the only potentially incriminating question they were asked.
The prosecution also argues that Grajedas and Funke did not establish a "real and appreciable" danger that their presence at the fight would be incriminating. For a witness to sustain the burden of proof, "`it need only be evident from the implications of *450 the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" Dorgan v. Kouba, 274 N.W.2d 167, 171 (N.D.1978), quoting Hoffman, 341 U.S. at 486-87, 71 S.Ct. at 818. A witness's claim of privilege cannot be rejected by the trial court or on appeal unless it is "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers cannot possibly have such tendency to incriminate."[4]Hoffman at 488, 71 S.Ct. at 819. We conclude that Grajedas and Funke could be incriminated by admitting they were present at the scene of this fight.
We agree with the prosecution that a witness's presence at the scene of a crime is normally a preliminary question that does "not entitle the witness to exercise the privilege of silence." 81 AmJur2d Witnesses § 94 (1992). However, we do not agree that a witness's presence will never furnish a link in the "chain of evidence" necessary to prosecute them. Hoffman, 341 U.S. at 486, 71 S.Ct. at 818.[5] To illustrate, a witness's presence at the scene of a crime would be important incriminating evidence for a charge of aiding and abetting, complicity, or conspiracy.
Grajedas and Funke will probably not be charged with a crime arising out of the fight that resulted in Running Shield's death. However, "the possibility of prosecution alone removes the risk of such from the realm of the imaginary and speculative." In Re Grand Jury Proceedings, 763 F.2d 321, 324 (8th Cir.1985). From the question each refused to answer, and the setting in which it was asked, it is evident that Grajedas and Funke believed their presence at the fight might incriminate them. Both the prosecutor and the district court viewed the possibility great enough to offer immunity. From the sketchy description of the brawl in this record, it is not "perfectly clear" that Grajedas's or Funke's answers "cannot possibly" be incriminating. Therefore, they properly claimed their privilege against self-incrimination.

4. Immunity

The broad reach of the privilege against self-incrimination is reduced by the availability of immunity. If a witness properly exercises the privilege, the witness cannot be compelled to testify unless the incriminating nature of the testimony is removed by a grant of immunity. Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977); Kastigar, 406 U.S. at 449, 92 S.Ct. at 1658-59. However, as we wrote in Phoenix Assurance Company v. Runck, 317 N.W.2d 402, 412 (N.D.1982), a witness who has been given sufficient immunity "may not refuse to testify" because the testimony can no longer be incriminating.[6]
The main question in this case is whether Grajedas and Funke were given sufficient immunity. Immunity against use and derivative use of a witness's testimony is broad enough to remove any danger of incrimination, because it "leaves the witness... in substantially the same position as if the witness had claimed his privilege."[7]Kastigar, 406 U.S. at 458-59, 92 S.Ct. at 1664; State v. Hass, 264 N.W.2d 464, 469 (N.D.1978). Upon a proper request by the prosecuting attorney under NDCC 31-01-09, *451 a district court can grant immunity to witnesses at a state's attorney's inquiry.[8]
NDCC 31-01-09 directs that "a court may immunize a witness only upon written request by the prosecuting attorney with the approval of the attorney general." State v. Perbix, 349 N.W.2d 403, 405 (N.D.1984). The grant of immunity is a useful "investigative tool" and should not be taken lightly. State v. Smith, 238 N.W.2d 662, 668 (N.D. 1976). Because a grant of immunity may interfere with the prosecution of the witness for criminal activity, NDCC 31-01-09 requires the approval of the state's highest-ranking law enforcement official, the attorney general, before an application for immunity can be made to a court.
At the hearing in this case, the district court attempted to give Grajedas and Funke immunity under NDCC 31-01-09 without the attorney general's approval. Grajedas and Funke argue that immunity could not be properly granted without this approval. The district court rejected this argument, saying "[o]n a State's Attorney's Inquiry he need not go to the Attorney General." We disagree.
The interpretation of a statute is a question of law that is fully reviewable on appeal. Gabriel v. Minnesota Mutual Fire & Cas., 506 N.W.2d 73 (N.D.1993). One sentence in NDCC 31-01-09 says "[i]n the case of a state's attorney's inquiry, such application [for immunity] must be made to the district court." The district court interpreted this sentence to allow the application to be made directly to the district court without the approval of the attorney general. However, this interpretation is contrary to the plain meaning of the word "application."
"Application" is defined as the "act of making a request for something." Black's Law Dictionary 98-99 (6th ed. 1990). Although approval of the attorney general is a prerequisite for granting immunity under NDCC 31-01-09, all requests for immunity are made to the trial court, who has discretion to grant the application.[9] This request to the court is the only application mentioned in NDCC 31-01-09. Therefore, we conclude that the direction that "application must be made to the district court" does not displace the prior direction for the attorney general's approval, but specifies that a request for immunity in a state's attorney's inquiry must be made to the district court that authorized the inquiry, rather than to another court. This interpretation is also consistent with the direction of NDCC 11-16-15 that the prosecution "[a]pply to the district court for the punishment of any witness" who refuses to testify at a state's attorney's inquiry.
The district court could not properly grant a prosecutor's application for immunity without the attorney general's approval. *452 Therefore, because it did not grant sufficient immunity, the court exceeded its jurisdiction by ordering Grajedas and Funke to incriminate themselves.
The prosecution also argues that, even if it alone cannot apply for immunity, NDCC 29-21-12.1 "short circuit[s]" the need for immunity by prohibiting the use of statements "obtained by duress, fraud, threat, or promises." Because the district court ordered Grajedas and Funke to testify under NDCC 11-16-15, the prosecution reasons that any incriminating testimony was "judicially coerced" and could not be used against them in a criminal proceeding. We reject this argument for several reasons.
First, if this "short-circuit" argument succeeds, any reluctant witness who is subpoenaed to testify would automatically be insulated from the use of the testimony in a criminal proceeding. This result would make NDCC 31-01-09 meaningless. As we wrote in Little v. Graff, 507 N.W.2d 55, 59 (N.D. 1993), we interpret related statutes to give meaning to every part.
Second, NDCC 29-21-12.1 is a remedial statute and only applies after an accused's statement has been obtained by duress, fraud, threat, or promises. As Justice Marshall said in his dissent in Kastigar, 406 U.S. at 470, 92 S.Ct. at 1669-70, the prosecution "turns reason on its head" by suggesting that a trial court can coerce a witness to incriminate herself as long as no use of the evidence is allowed.
Finally, a person who testifies under a grant of immunity is "in a stronger position at trial than a defendant who asserts a Fifth Amendment coerced-confession claim." Kastigar, 406 U.S. at 461, 92 S.Ct. at 1665. Under NDCC 29-21-12.1, the defendant has the burden of showing the confession was the result of duress, fraud, threat or promises. However, when prosecuting a person who testified under a grant of immunity, the state must prove that all of its evidence was derived from a legitimate and independent source. Without this procedural protection, NDCC 29-21-12.1 does not sufficiently protect Grajedas and Funke from the adverse use of their testimony.
The "immunity" improperly granted to Grajedas and Funke was "not as comprehensive as the protection afforded by the privilege [against self-incrimination]." Kastigar, 406 U.S. at 449, 92 S.Ct. at 1658-59. Therefore, Grajedas and Funke should not have been held in contempt for exercising their privilege against self-incrimination, and we reverse.[10]
VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.
NOTES
[1] Under the prosecution's argument, a contemnor would have to stay in jail during the appeal of a remedial contempt, unless the contemnor could get a stay of the order. But see Parmer v. Parmer, 373 So.2d 845 (Ala.1979) (appeal not moot even after contempt is purged).
[2] Grajedas and Funke do not question the jurisdiction of the district court to modify its contempt orders after their notices of appeal were filed. But see People v. Buckley, 164 Ill.App.3d 407, 115 Ill.Dec. 428, 430, 517 N.E.2d 1114, 1116 (1987).
[3] U.S. Const. amend. V: "No person ... shall be compelled, in any criminal case, to be a witness against himself ...;" see also N.D.Const. art. I, § 12: "No person shall ... be compelled in any criminal case to be a witness against himself...."
[4] Sometimes, an in camera hearing may be appropriate before a trial court rejects a witness's claim of self-incrimination. See State v. Gruchalla, 467 N.W.2d 451, 455 (N.D.1991).
[5] Of the cases cited with the quotation from 81 AmJur2d, only Young v. Knight, 329 S.W.2d 195 (Ky.1959), was decided after Hoffman. The Young decision involved only one criminal act, one offender and one victim. That is not analogous to the brawl in this case.
[6] When the possibility of a future criminal charge is remote, or the witness is clearly protecting someone else, judicial economy will frequently be best served by granting the witness immunity instead of questioning the validity of the witness's claim of privilege. Once immunity is given, the witness can either answer or be held in contempt.
[7] Use immunity does not protect a witness from being held in contempt for refusing to answer a question after immunity has been given. NDCC 31-01-09.
[8] NDCC 31-01-09 was amended in 1987 to replace transactional immunity with use immunity. 1987 N.D.Laws Ch. 398 § 1. NDCC 31-01-09 now says:

Privilege against self-incriminationGrant of immunity. No person may be compelled to be a witness against himself in a criminal action. Notwithstanding any provision of law to the contrary, in any criminal proceedings before a court or grand jury or state's attorney's inquiry, if a person refuses to answer a question or produce evidence of any kind on the ground that he may be incriminated thereby, and if the prosecuting attorney, in writing and with approval of the attorney general, requests the court to order that person to answer the question or produce the evidence, the court after notice to the witness and hearing may so order, and that person shall comply with the order. In the case of a state's attorney's inquiry, such application must be made to the district court. No testimony or other information compelled under the order, or any information directly or indirectly derived from the testimony, may be used against the witness in any criminal proceeding, except a prosecution for perjury, giving a false statement, or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order.
Compare 18 U.S.C. §§ 6002, 6003.
[9] As our federal circuit has recognized, NDCC 31-01-09 requires a grant of immunity in criminal cases, unlike other immunity statutes that operate automatically. United States v. McDaniel, 482 F.2d 305, 307 (8th Cir.1973), affirming 352 F.Supp. 585, 587 (D.N.D.1972). For automatic immunity statutes, see NDCC 16.1-08-03 (corporate campaign contributions); NDCC 16.1-14-12 (presidential electors); NDCC 25-01.1-09 (investigation of state hospital); NDCC 28-25-06 (examination of judgment debtor); NDCC 42-02-08 (abatement of common nuisance); NDCC 54-17-17 (industrial commission).
[10] Because we reverse for other reasons, we do not address the arguments raised by Grajedas and Funke about due process and the power of a court to hold a juvenile in contempt.