# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 68

In the Interest of M.R., a child

State of North Dakota,                                    Petitioner and Appellee

v.

J.R., Father,                                            Respondent and Appellant

and

M.R., Child, and N.K., Mother,                                    Respondents

No. 20210204

Appeal from the Juvenile Court of Divide County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

DISMISSED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices VandeWalle and McEvers joined. Justice Crothers filed a specially concurring opinion.

Seymour R. Jordan (on brief), State's Attorney, Crosby, N.D., for petitioner and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for respondent and appellant.

**Tufte, Justice.**

[¶1] A father, J.R., appeals a juvenile court order finding his child, M.R., to be deprived; removing M.R. from the care, custody, and control of the parents; and placing M.R. with North Star Human Service Zone ("North Star"). Because M.R. is no longer a minor child and the order on appeal has expired, we dismiss the appeal as moot.

I

[¶2] North Star petitioned to have M.R. placed in its care, custody, and control, alleging M.R. was a "deprived child" as defined by statute. After a hearing, the juvenile court found the parties agreed that M.R.'s placement with North Star until the age of eighteen was in M.R.'s best interests. The court found M.R. was a deprived child, M.R. remaining in the parental home was contrary to M.R.'s welfare, reasonable efforts were made to prevent removal, and M.R. desired to be placed with North Star. The court placed M.R. in North Star's care, custody, and control. The order provides that it shall expire on M.R.'s eighteenth birthday. The father appealed. After the notice of appeal was filed, M.R. turned eighteen years old. In light of M.R. no longer being a minor child, we directed the parties to address in their briefs whether the case is moot.

II

[¶3] "This Court may consider the threshold issue of mootness in every appeal." *Interest of B.A.C.*, 2017 ND 247, ¶ 7, 902 N.W.2d 767. We do not render advisory opinions, and "an appeal will be dismissed if the issues become moot or academic, leaving no actual controversy to be determined." *Schwartzenberger v. McKenzie Cty. Bd. of Cty. Comm'rs*, 2017 ND 211, ¶ 6, 901 N.W.2d 64. "No actual controversy exists if certain events have occurred which make it impossible for this Court to issue relief, or when the lapse of time has made the issue moot." *In re G.K.S.*, 2012 ND 17, ¶ 4, 809 N.W.2d 335. An appeal is not moot if the district court's decision "continues to have 'collateral

consequences' for the appealing party." *Id.* (quoting *Millang v. Hahn*, 1998 ND 152, ¶ 6, 582 N.W.2d 665).

[¶4] The father contends the case is not moot because the judicial determination of deprivation may potentially have collateral consequences for him. He asserts that if he has more children, the deprivation determination may be used against him in some future proceeding, citing *In re B.B.*, 2008 ND 51, ¶ 9, 746 N.W.2d 411 ("[E]vidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue."). He also argues the deprivation determination could affect his future employment, such as in an educational setting with minors; limit his housing options; and hinder his ability to obtain a professional license.

[¶5] In *Interest of B.A.C.*, the district court ordered B.A.C. to be hospitalized at the State Hospital for 90 days. 2017 ND 247, ¶ 5. The court found that as a result of its order, B.A.C. was prohibited from possessing firearms under federal law. *Id.* The court ordered B.A.C. to be released from the hospital about two weeks after the hospitalization order. *Id.* On appeal, we addressed whether the case was rendered moot by B.A.C.'s release. *Id.* at ¶ 6. We concluded the appeal was not moot because the finding that federal firearms restrictions applied was a "lasting collateral consequence of the order." *Id.* at ¶ 9. We emphasized, "*Absent evidence that B.A.C. was already subject to a federal firearms restriction*, we will presume that these restrictions are a collateral consequence." *Id.* at ¶ 10 (emphasis added).

[¶6] The father's alleged collateral consequences are remote and speculative, as opposed to the actual firearm restrictions in effect in *Interest of B.A.C.* The father does not point to any evidence in the record showing that his alleged collateral consequences are anything more than mere possibilities. *See Dep't of Human Servs. v. A.B.*, 412 P.3d 1169, 1178-79 (Or. 2018) (rejecting mother's alleged collateral consequences that finding of abuse and neglect would disadvantage her in future child abuse and neglect proceedings and limit her employment options); *Dep't of Human Servs. v. B.A.*, 330 P.3d 47, 50-51 (Or. Ct. App. 2014) (rejecting parents' asserted collateral consequences of possible

2

harm to prospective employment and adverse future action by Department of Human Services as too speculative); *N.F. v. G.F.*, 2013 UT App 281, ¶ 14, 316 P.3d 944 (rejecting grandmother's alleged collateral consequence that child abuse finding in expired protective order may be used against her by mother in subsequent civil action as hypothetical and speculative).

[¶7] Further, the father's alleged collateral consequences would not be cured by a favorable ruling on appeal. The record shows the father is incarcerated in Oregon. At oral argument, the father's attorney did not dispute that the father was convicted of rape and attempted murder. Thus, the father's alleged collateral consequences of the deprivation determination—informing future deprivation determinations and limiting his ability to obtain employment, housing, and professional licensure—are no different or greater than the adverse consequences flowing from his convictions for rape and attempted murder. *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (identifying adverse consequences of a criminal conviction); *In re A.K.*, 628 S.E.2d 753, 755-56 (N.C. 2006) (same); *Cole v. Campbell*, 968 S.W.2d 274, 276 (Tenn. 1998) (same); *State v. Golston*, 643 N.E.2d 109, 111 (Ohio 1994) (stating "collateral legal consequences associated with a felony conviction are severe and obvious"). In other words, the father has not established he will suffer an adverse consequence as a result of the deprivation determination.

[¶8] Because M.R. has reached the age of eighteen, the juvenile court order has expired, and the father has failed to show the order caused any collateral consequences, we conclude no actual controversy remains and the appeal is moot.

### III

[¶9] The appeal is dismissed.

[¶10] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Lisa Fair McEvers
Jerod E. Tufte

3

**Crothers, Justice, specially concurring.**

[¶11] I agree with the majority opinion that the collateral consequences exception to the mootness doctrine does not apply because M.R. reached the age of majority and the father did not sufficiently prove consequences actually exist. Majority opinion, ¶¶ 7-8. I do not agree with the majority that extraneous likely adverse effects from the father's convictions and current incarceration should be considered collateral consequences in this deprivation appeal. *Id.* at ¶ 7.

[¶12] This Court regularly invokes the collateral consequences exception to mootness. *See, e.g., Interest of B.A.C.,* 2017 ND 247, ¶ 7, 902 N.W.2d 767 (appeal of mental illness adjudication after release); *State v. Olson,* 2003 ND 23, ¶ 9, 656 N.W.2d 650 (guilty plea after probation revocation not moot because an increased risk that any future violation of a condition of his probation will result in revocation); *Kahl v. Dir., N.D. Dep't of Transp.,* 1997 ND 147, ¶ 7, 567 N.W.2d 197 (defendant's completion of sentence for criminal conviction does not render a direct appeal from the conviction moot because of the collateral consequences stemming from a conviction, including consideration of the conviction in sentencing if defendant is again convicted of a crime); *Matter of Contempt of Grajedas,* 515 N.W.2d 444, 448 (1994) (contemptors did not comply with the district court's orders and were not purged of their contempts so that appeal was only way to challenge the orders and remove the individual stigma of their contempt convictions). However, I do not find that we have described how the exception works, and what burden is imposed on an appealing party.

[¶13] The Connecticut Supreme Court provided a useful explanation of the collateral consequences exception as follows:

> Our inquiry begins with some basic principles. Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. *Wallingford v. Dept. of Public Health,* 262 Conn. 758, 766, 817 A.2d 644 (2003). The mootness doctrine is founded on the same policy interests as the doctrine of standing, namely, to assure

the vigorous presentation of arguments concerning the matter at issue. The standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. Indeed, we note that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law.

An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. However, under this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur.

To invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. *State v. McElveen*, *supra*, 261 Conn. at 208, 802 A.2d 74.

*Putman v. Kennedy,* 900 A.2d 1256, 1261 (Conn. 2006). (Cleaned up.)

[¶14] In the present appeal, the father only offered conjecture that he would suffer collateral consequences from the finding M.R. was deprived. Majority opinion, ¶ 7. His arguments were just that—which fall short of showing by a reasonable probability that he would be harmed by the juvenile court's

5

deprivation finding. Absent that showing of collateral consequences, this case is not justiciable and I agree this appeal should be dismissed as moot.

[¶15] Daniel J. Crothers