**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**DECEMBER 28, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 249

Amanda R. Anderson,                                          Petitioner

     v.

Christopher James Lamm,                    Respondent and Appellant

### No. 20230301

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Charles B. Neff, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Christopher J. Lamm, Williston, ND, respondent and appellant; submitted on brief.

**Crothers, Justice.**

[¶1]   Christopher Lamm appeals from a disorderly conduct restraining order prohibiting him from having contact with Amanda Anderson. Although the restraining order expired while this appeal was pending, the appeal is not moot because a reasonable possibility exists that the district court's decision will have adverse collateral consequences for Lamm. We reverse the restraining order, concluding the evidence is insufficient to support the court's finding that Lamm engaged in disorderly conduct.

I

[¶2]   The parties are not married; they share a child. The child lives with Anderson, who resides in Bainville, Montana. Lamm lives in Williston. Anderson filed a petition for a disorderly conduct restraining order against Lamm. Anderson alleged Lamm made a false child abuse report against her; he has threatened to take the child; he has choked and bit Anderson; he carries a gun; he has made comments about shooting people; and he traveled to Bainville to use the post-office and also drove by Anderson's house and place of employment.

[¶3]   The district court issued a temporary restraining order and held a hearing. Anderson, Lamm, and an employee of Family Bridges Visitation Center, where Lamm is allowed supervised visits with the child, all testified. The court heard testimony indicating the parties are litigating custody of the child in Montana. The court found Lamm engaged in disorderly conduct on August 7, 2023, when he traveled through Bainville and used the post-office. The court made no findings concerning what specific act or actions it considered disorderly conduct. The court issued a disorderly conduct restraining order on August 21, 2023, that prohibited Lamm from coming within 250 feet of Anderson and various addresses in Bainville. On September 9, 2023, Lamm filed a notice of appeal. The restraining order expired on October 5, 2023, before we received Lamm's appellate brief.

[¶4] The threshold issue is whether Lamm's appeal from the expired restraining order is moot. We do not issue advisory opinions and will ordinarily dismiss a moot appeal. *Interest of M.R.*, 2022 ND 68, ¶ 3, 972 N.W.2d 94. An appeal is moot when there is no actual controversy left to be determined because events have occurred that make it impossible for this Court to issue relief. *Id.* We have recognized exceptions to our rule against issuing advisory opinions. *See In re G.K.S.*, 2012 ND 17, ¶ 4, 809 N.W.2d 335. We may decide issues "of great public interest" that involve the power and authority of public officials; questions that by their nature are "capable of repetition" yet evade review; and appeals from district court decisions that continue to have adverse "collateral consequences" for an appellant. *Id.*

[¶5] We have not addressed whether an appeal from an expired disorderly conduct restraining order is moot. Multiple jurisdictions have decided appeals from expired restraining orders because of the collateral consequences restraining orders entail. *See Chretien v. Chretien*, 170 A.3d 260, 262-63 (Me. 2017) (stating "a growing number of jurisdictions have observed that protective orders predictably generate collateral consequences affecting a party against whom the order was issued and, therefore, a presumption against mootness should apply to appeals from orders that have expired"); *Putman v. Kennedy*, 900 A.2d 1256, 1263-64 (Conn. 2006) (collecting cases deciding appeals from expired restraining orders). Other jurisdictions have analyzed the doctrine of collateral consequences in this context but determined the appellant failed to meet his or her burden of establishing it applied. *See, e.g., Winkowski v. Winkowski*, 989 N.W.2d 302, 309 (Minn. 2023) (holding appellant failed to demonstrate "real and substantial disabilities" attached to a restraining order). At least one jurisdiction has adopted a standard requiring a showing of "demonstrated legal collateral consequences," as opposed to a speculative "possibility of future collateral consequences." *See Cyran v. Cyran*, 97 N.E.3d 487, 489-90 (Ohio 2018).

[¶6] We have repeatedly acknowledged the "seriousness and social stigma associated with a restraining order." *Rath v. Rath*, 2016 ND 71, ¶ 9, 877 N.W.2d

298; *see also Meier v. Said*, 2007 ND 18, ¶ 24, 726 N.W.2d 852 (describing "grave consequences that a disorderly conduct restraining order may have for the respondent"). Nonetheless, our collateral consequences jurisprudence requires more than "remote and speculative" consequences to save an appeal from dismissal on mootness grounds. *Interest of M.R.*, 2022 ND 68, ¶ 6. There must be "a reasonable possibility" that collateral consequences will occur. *Id.* at ¶ 13 (Crothers, J., specially concurring) (quoting *Putman*, 900 A.2d at 1261). Thus, to determine whether Lamm's appeal survives mootness, we must examine the specific circumstances of his case.

[¶7]  The restraining order is based on a finding that Lamm engaged in disorderly conduct against Anderson, which is statutorily defined as intrusive or unwanted acts intending to adversely affect the safety, security, or privacy of another person. *See* N.D.C.C. § 12.1-31.2-01(1). Anderson is the mother of Lamm's child. Lamm asserts the parties are currently litigating custody of the child in Montana. A finding of disorderly conduct against Lamm is relevant to the custody dispute. *See In re Marriage of Clingingsmith*, 838 P.2d 417, 421 (Mont. 1992) (stating the parents' ability to cooperate in their parental roles is a factor to be considered when making a custody determination). The Montana court, when making a custody determination, is likely to consider the district court's finding of disorderly conduct and weigh it against Lamm. *See Bier v. Sherrard*, 623 P.2d 550, 552 (Mont. 1981) (stating a party's fitness to parent is a factor to be considered); *see also* Mont. Code Ann. § 40-4-212(1)(f) (threat of abuse is a factor to be considered in custody determinations). Although the restraining order in this case is expired, there is a reasonable possibility it will continue to adversely affect Lamm. The appeal therefore warrants our consideration on the merits.

III

[¶8]   Lamm argues the evidence does not support the court's decision to issue the restraining order, and he asserts his conduct is constitutionally protected.

[¶9]  Disorderly conduct means "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1-31.2-01(1). To obtain a disorderly conduct

restraining order, a petitioner must show there are "reasonable grounds to believe that the respondent has engaged in disorderly conduct." N.D.C.C. § 12.1-31.2-01(5)(d). Reasonable grounds exist for issuance of a restraining order when the petitioner establishes facts "sufficient to warrant a person of reasonable caution to believe" disorderly conduct occurred. *Cusey v. Nagel*, 2005 ND 84, ¶ 6, 695 N.W.2d 697 (quoting *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D. 1994)). The "reasonable grounds" standard is "synonymous with probable cause." *Baker v. Mayer*, 2004 ND 105, ¶ 13, 680 N.W.2d 261 (quoting *Tibor v. Lund*, 1999 ND 176, ¶ 7, 599 N.W.2d 301). Under N.D.C.C. § 12.1-31.2-01, before issuing a disorderly conduct restraining order, the district court must find the respondent's conduct adversely affected the petitioner's safety, security, and privacy and that it was the respondent's intent to do so. *See Holm v. Holm*, 2023 ND 228, ¶¶ 8-10, --- N.W.2d ---; *Rekow v. Durheim*, 2022 ND 177, ¶¶ 7-9, 980 N.W.2d 917.

[¶10] Rule 52(a), N.D.R.Civ.P., applies to disorderly conduct restraining orders. *Rekow*, 2022 ND 177, ¶ 8. Under Rule 52(a), the district court must "find the facts specially and state its conclusions of law separately." We review factual findings made in a disorderly conduct restraining order proceeding under the clearly erroneous standard of review. *Albertson v. Albertson*, 2023 ND 225, ¶ 3, --- N.W.2d ---. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Legacie-Lowe v. Lowe*, 2023 ND 140, ¶ 4, 994 N.W.2d 177). When there is a factual basis to support issuance of a disorderly conduct restraining order, whether to issue a restraining order, and the specific provisions to include in the order, are left to the discretion of the district court. *Rekow*, at ¶ 6. "The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.* (quoting *Combs v. Lund*, 2015 ND 10, ¶ 4, 858 N.W.2d 311).

[¶11] The district court found Lamm engaged in disorderly conduct on August 7, 2023, when he traveled through Bainville. Lamm admitted he drove

4

through Bainville to use the post-office. He testified the parties have a child custody case pending with a court in Wolf Point, Montana. Lamm stated he drove to Wolf Point to file an expedited motion with the court, and he dropped copies in the mail for Anderson at the Bainville post-office on his return to Willison. He testified it was convenient to use the post-office in Bainville because it is between Wolf Point and Williston. He denied driving by Anderson's home or work, but he admitted Bainville is a small town and he may have been able to see Anderson's home if he looked, which he also denied doing. Anderson testified multiple people contacted her to warn her Lamm was in Bainville. Anderson testified she was fearful of Lamm and worried he may try to take the child. Anderson acknowledge she did not have personal contact with Lamm or see him in Bainville. The court made a finding on the record, stating: "I am going to find the actions on August 7th meet the level of disorderly conduct[.]"

[¶12] We have explained a petitioner must specifically show how a respondent's conduct affected the petitioner's safety, security, or privacy:

> "It is not enough to show the respondent's actions are unwanted; rather, the petitioner must show specific unwanted acts that are intended to affect the safety, security, or privacy of another person. Subjective fear is insufficient to support a disorderly conduct restraining order. It is not enough under N.D.C.C. § 12.1-31.2-01 that the petitioner wants the other person out of the petitioner's life. Vague generalities do not suffice, and conclusory testimony that 'he harassed me,' 'he abused me,' or 'he threatened me' does little to aid the trial court in determining whether the alleged perpetrator's actions rise to the level of disorderly conduct under the statute. A petitioner must show how the respondent's conduct affected his safety, security, or privacy. Conclusory statements on the record by the district court will not suffice."

*Rekow*, 2022 ND 177, ¶ 7 (cleaned up).

[¶13] Setting aside the question whether Lamm's conduct in Montana can be the sole basis for issuing a North Dakota restraining order, the evidence here is insufficient to support a finding Lamm adversely affected Anderson's safety, security, or privacy. Anderson's testimony concerning her fear of Lamm does

5

not show he engaged in disorderly conduct. Nor does Lamm's mere presence in the same town as Anderson demonstrate he acted with an intent to adversely affect her safety, security, or privacy. On this record, the district court's finding that Lamm engaged in disorderly conduct is clearly erroneous and the court's decision to issue the restraining order without evidence of disorderly conduct amounts to an abuse of discretion. Because no evidence shows Lamm engaged in disorderly conduct, we need not determine whether his actions were constitutionally protected activity.

## IV

[¶14] The disorderly conduct restraining order is reversed.

[¶15] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr